UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Haralambos Gikas

        v.                          Civil No. 11-cv-573-JL
                                    Opinion No. 2013 DNH 057
JPMorgan Chase Bank, N.A., et al.


**MEMORANDUM ORDER**

Plaintiff Haralambos Gikas filed this action against the servicer of his mortgage loan, JPMorgan Chase Bank, N.A., and the original mortgagee, Mortgage Electronic Registration Systems, Inc. ("MERS"), seeking relief for (1) their failure to provide him with a permanent loan modification, and (2) their allegedly wrongful conduct during the foreclosure of his mortgage.  This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) (diversity), because Gikas is a New Hampshire citizen, Chase and MERS are out-of-state entities, and the amount in controversy exceeds $75,000.

The defendants have moved for summary judgment, see Fed. R. Civ. P. 56, arguing that the undisputed material facts establish that Gikas was not entitled to a modification as a matter of law and that they did not participate in the foreclosure.  After hearing oral argument, the court grants the motion.  As explained in more detail below, the defendants are entitled to summary judgment on Gikas's modification-related claims because Gikas did

not provide the information that, he acknowledged, was a prerequisite to his eligibility for a modification.  The defendants are also entitled to summary judgment on Gikas's claims contesting the events surrounding the foreclosure, including the provision of statutory notice under N.H. Rev. Stat. Ann. § 479:25, because it was Federal National Mortgage Association--not Chase or MERS--that conducted the foreclosure, and thus owed the statutory and common-law duties that Gikas claims were breached.

## I.  <u>Applicable legal standard</u>

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is "genuine" if it could reasonably be resolved in either party's favor at trial.  See Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010) (citing Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)).  A fact is "material" if it could sway the outcome under applicable law. Id. (citing Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  In analyzing a summary judgment motion, the court "views all facts and draws all reasonable inferences in the light most

favorable to the non-moving party." Id.  The following facts are
set forth accordingly.

## II.  **Background**

On November 26, 2002, plaintiff Haralambos Gikas purchased
property at 10 Maplecrest in Newmarket, New Hampshire.  Although
the record does not reflect the purchase price,[1] Gikas testified
that he made an initial down payment that, when combined with
closing costs, totaled around $113,000.  Less than a week later,
on December 2, 2002, Gikas executed a promissory note in the
amount of $165,000 in favor of SIB Mortgage Corporation.  The
note was secured by a mortgage on the Newmarket property; the
named mortgagee was defendant Mortgage Electronic Registration
Systems, Inc., or "MERS," acting "as a nominee for [SIB] and
[its] successors and assigns."

At some point, SIB indorsed Gikas's note in blank, and
defendant JPMorgan Chase Bank, N.A. began servicing his loan on
behalf of the noteholder.  The precise timeline of these events
is unclear, but Chase was servicing the loan at least by
September 2008, when it sent Gikas a notice of default informing

---

[1]In his memorandum, Gikas represents that the purchase price
was $265,000; though the court has no reason to doubt this
representation, Gikas has identified no evidence substantiating
it.  In any event, the purchase price is immaterial to the issues
before the court.

him that, if he did not submit a payment of $1,923.75 within 30
days, foreclosure action would begin.  Over the next nine months,
Chase sent Gikas a series of similar notices, but did not
foreclose as threatened.  By June 2009, Gikas was nearly $5,000
in arrears, and on June 13, Chase informed him that if he did not
submit a payment of $4,892.49 within 32 days, it would accelerate
the maturity of the loan and commence foreclosure.  Gikas did not
make this payment.

Again, however, Chase did not foreclose.  Instead, in
November 2009, it sent Gikas a letter informing him of his
potential eligibility for a loan modification under the federal
government's Home Affordable Modification Program, or "HAMP."
The letter enclosed a customized "Trial Period Plan" ("TPP"), and
went on to explain that if Gikas returned an executed TPP and
otherwise met the HAMP eligibility requirements, he could qualify
for a modification.  Among other things, the letter explained,
Gikas would need to submit documents--which were identified in
the letter--verifying his income, and to make a series of reduced
mortgage payments.  Once he had done so, and Chase had confirmed
his eligibility for a modification under HAMP, Chase would then
"finalize [his] modified loan terms and send [him] a loan
modification agreement."  Letter of Nov. 20, 2009 (document no.
23-8) at 5.  Similarly, the TPP itself explained that if Gikas

4

did "not provide all information and documentation required by
[Chase], the [note and mortgage] will not be modified and this
Plan will terminate." Id. at 9, ¶ 2(F).

Gikas signed the TPP and returned it to Chase along with a
HAMP "Hardship Affidavit," which certified that he would "provide
all requested documents" and, like the TPP, acknowledged that if
he did "not provide all of the required documentation, [Chase]
may cancel the [modification] and may pursue foreclosure."
Hardship Aff. (document no. 23-9) at 2.  Gikas did not, however,
provide the income documentation identified in the cover letter,
prompting Chase to send him a letter in January 2010 requesting
that information again, and warning him that his modification
might be denied if he did not provide it within fifteen days.
Gikas claims he did not receive this letter, and thus did not
submit documents in response.  A month later, Chase sent him a
substantially similar letter; again, though, Gikas claims he did
not receive it, and thus did not respond.  Although Gikas made
the payments required under the TPP, in August 2010, Chase sent
him a letter stating that it could not offer him a modification
under HAMP "because you did not provide us with the documents we
requested."  Notice of Expiration (document no. 23-12) at 1.

The following month, MERS, as nominee for SIB, assigned the
mortgage to Federal National Mortgage Association, better known

as "Fannie Mae".  That same day, Fannie Mae, through counsel, sent Gikas a Notice of Foreclosure Sale informing him that it had scheduled a sale of the Newmarket property for September 29, 2010.[2]  Gikas claims he did not receive the notice, which contained language informing him of his right to petition the Superior Court to enjoin the sale.  See N.H. Rev. Stat. Ann. § 479:25, II.  He therefore did not file such a petition, and the sale went forward as scheduled.  The high bidder at auction was a third party, Maureen Staples, who purchased the property for $165,670.

Gikas filed this action against Chase, MERS, and SIB in Rockingham County Superior Court on November 7, 2011.  Chase and MERS removed the action to this court.  See 28 U.S.C. § 1441.  Following removal, Gikas amended his complaint to assert six counts against those two defendants.[3]  On the defendants' motion,

_____

[2]On three consecutive weeks leading up to the sale, Fannie Mae also published notice of the sale in the Manchester Union Leader, which, foreclosure counsel attests, is "a newspaper of statewide circulation and general circulation within" Newmarket. Lamper Aff. (document no. 23-17) at 2, ¶ 6.  Gikas's objection claims that the Union Leader "is not generally read in the Town of Newmarket," Memo. in Supp. of Obj. (document no. 26-1) at 6-7 & n.1, but cites only inapposite deposition testimony in support of this assertion (which the court finds somewhat dubious).  But even if a genuine dispute were to exist as to this fact, it is immaterial to the court's resolution of defendants' motion.

[3]SIB was also named as a defendant in the caption of the amended complaint, but this appears to have been a holdover from

this court dismissed Count 3, a claim under the New Hampshire
Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A.  See Order
of June 6, 2012.  In due course, the defendants filed the present
motion, seeking summary judgment on the remaining five counts.

## III.  Analysis

### A.  Modification-related claims (Counts 1-2)

Counts 1 and 2 of the amended complaint seek recovery for
the defendants' failure to provide Gikas with a permanent loan
modification.  Count 1 alleges that the defendants, "[b]y failing
to offer [Gikas] permanent HAMP modifications *[sic]*," breached
the TPP, or, in the alternative, broke a promise upon which Gikas
reasonably relied.  Am. Compl. (document no. 16) ¶¶ 49-50.  Count
2 similarly alleges that the defendants breached the implied
covenant of good faith and fair dealing by "failing to offer a
permanent modification."[4]  Id. ¶ 53.  The defendants argue that

---

the initial complaint, as none of the counts of the amended
complaint are directed at SIB, and Gikas has voluntarily
dismissed his claims against SIB.  See Notice of Voluntary
Dismissal (document no. 12).

    [4]Count 2 also alleges that the defendants breached the
covenant by "foreclosing upon [Gikas's] home when he had no
actual notice and could not oppose the foreclosure before sale
was made to a third person, and in allowing sale of the home at
an unreasonably and unconscionably low sales price."  Am. Compl.
(document no. 16) ¶ 53.  These theories do not entitle Gikas to
relief for the reasons set forth in the following section.

they are entitled to summary judgment on this claim, pointing out that Gikas failed to provide the documents Chase had requested, which, as the TPP and Hardship Affidavit that he signed both unambiguously stated, entitled Chase to terminate the TPP.  The court agrees.

As an initial matter, the court observes that the law does not impose any generalized duty on lenders or servicers to modify or restructure a loan.  See, e.g., Ruivo v. Wells Fargo Bank, N.A., 2012 DNH 191, 12 (noting that the New Hampshire Supreme Court "has never held that a bank has a tort duty to entertain a borrower's application to modify a lawful loan agreement" and declining to recognize such a duty); L'Esperance v. HSBC Consumer Lending, Inc., 2012 DNH 104, 54 (refusing to recognize "the novel proposition that a loan servicer has an enforceable tort duty to modify loans"); cf. also Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d 107, 129-30 (D.N.H. 2012) ("[T]he covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan.").  If either of the defendants had any obligation to modify Gikas's loan, then, that obligation necessarily arose from the terms of the TPP (which contain the only arguable promise of a

modification in the record that might support Counts 1 and 2).[5]
As the defendants have pointed out, though, those terms
unambiguously required them to provide Gikas with a permanent
modification only if he met several preconditions, one of which
was to provide certain documents at Chase's request.  <u>See</u> Part
II, <u>supra</u>.

    Gikas acknowledges that he failed to provide Chase with the
documents it requested.  He argues, however, that because he did
not receive Chase's January and February 2010 letters asking him
to submit documentation of his income, the defendants could not
deny him a permanent modification for failing to do so.  But, as
discussed in Part II, <u>supra</u>, the cover letter Chase sent to Gikas
along with the TPP specifically listed a number of documents that
he would need to return along with the signed TPP.  <u>See</u> Letter of
Nov. 20, 2009 (document no. 23-8) at 3 (stating that "[t]o accept
this offer, and see if you qualify for a Home Affordable
Modification, send the items below to CHASE HOME FINANCE, LLC, no
later than DECEMBER 20, 2009" and providing a checklist of
documents).  Among those documents were a "[c]opy of the two most
recent pay stubs" (if Gikas was a salaried employee) or a "[c]opy

---

[5]This is consistent with the discussion between the court
and counsel at the preliminary pretrial conference in this case.
<u>See</u> Order of Apr. 3, 2012 ("The breach of contract claim . . .
will be limited to the HAMP Trial Period Plan-based claim.").

of the most recent quarterly or year-to-date profit/loss statement" (if Gikas was self-employed), id.--the very same documents referenced in Chase's January and February 2010 letters.

It is undisputed that Gikas received the cover letter, as evidenced by his submission of a signed TPP to Chase, and that he nonetheless failed to submit the documents as directed. That he claims not to have received Chase's later requests for the same documents is immaterial. Gikas has identified no language in the TPP nor principle of law that required Chase to make multiple requests for omitted documents. Because Gikas did not fulfill the preconditions to a modification under the terms of the TPP, the defendants were not obligated to provide him with one. See Marquez v. Wells Fargo Bank, N.A., No. 12-cv-11725-RGS, 2013 WL 98533, *2-3 (D. Mass. Jan. 8, 2013) (dismissing TPP-based claims where borrowers acknowledged that they failed to provide income documentation). Summary judgment is granted to the defendants on Counts 1 and 2.

**B.    Foreclosure-related claims (Counts 4-6)**

Counts 4 through 6 of Gikas's amended complaint all seek recovery for the events surrounding the foreclosure of Gikas's mortgage. Counts 4 and 5 allege that the defendants breached

fiduciary duties owed to Gikas and violated N.H. Rev. Stat. Ann. § 479:25, the statute governing foreclosure by power of sale, by "foreclos[ing] without [Gikas] having actual notice" and selling the property "at an unconscionably low and unreasonable price." Am. Compl. (document no. 16) ¶ 62; see also id. ¶ 66.  Count 6 alleges that the defendants did not possess Gikas's promissory note, leaving them "with no standing to exercise foreclosure under the mortgage."  Id. ¶ 69.

The problem common to all three counts, as defendants point out, is that Chase and MERS did not conduct the foreclosure; Fannie Mae did.  In light of this undisputed fact, it is difficult to see how Gikas can possibly recover from those defendants for the alleged wrongs visited upon him during the foreclosure.  He nonetheless argues that Chase may be held liable for those wrongs because "it continued to service the loan at the time of the foreclosure proceedings and events leading up to the foreclosure sale," Memo. in Supp. of Obj. (document no. 26-1) at 17, and that MERS may be held liable because it was the original mortgagee and assigned the mortgage to Fannie Mae "apparently for the sole purpose of foreclosing," id. at 18.

These arguments are unavailing.  Under New Hampshire law, it is the "mortgagee executing a power of sale," not the servicer or original mortgagee, which must observe "the statutory procedural

11

requirements" and "protect the interests of the mortgagor through the exercise of good faith and due diligence" in the foreclosure process. Murphy v. Fin. Dev. Corp., 126 N.H. 536, 540 (1985); see also N.H. Rev. Stat. Ann. § 479:25. If those requirements were not met, that was Fannie Mae's doing, not the defendants'. Gikas has identified no doctrine under which Fannie Mae's liability for that shortcoming can be imputed to Chase (its agent) or MERS (its predecessor), nor is the court aware of any. And it should (but, unfortunately, apparently cannot) go without saying that whether or not Chase and MERS had standing to conduct the foreclosure is entirely irrelevant to the validity of the sale when they did <u>not</u>, in fact, conduct the foreclosure. Cf., e.g., Crews v. Fannie Mae, No. 2:11-cv-11656, 2012 WL 642067, *4 (E.D. Mich. Feb. 8, 2012) ("Because Wells Fargo is the [entity] that initiated the foreclosure, only Wells Fargo's standing is relevant."). Summary judgment is granted to defendants on Counts 4 through 6.

## IV.  **Conclusion**

For the reasons set forth above, the defendants' motion for summary judgment[6] is GRANTED. The clerk shall enter judgment accordingly and close the case.

------------------------

[6]Document no. 23.

At oral argument, plaintiff orally renewed his motion to amend the complaint to add a claim against Fannie Mae, which the court previously denied.  <u>See</u> Order of Feb. 27, 2013.  For the reasons set forth in its prior order, that motion is DENIED.

        **SO ORDERED.**

                                    _____
                                    Joseph N. Laplante
                                    United States District Judge

Dated:  April 10, 2013

cc:  Shenanne Ruth Tucker, Esq.
     Joseph Patrick Kennedy, Esq.